USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/5/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
ABM INDUSTRY GROUPS, LLC,

         Petitioner,

     -v-

INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 30A,
30B, AFL-CIO,

         Respondent.
------------------------------------------------------------- X

1:18-cv-10770-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

## I.   INTRODUCTION

Petitioner ABM Industry Groups, LLC ("ABM") seeks to confirm an arbitration award entered following arbitration against Respondent International Union of Operating Engineers, Local 30, 30A, 30B, AFL-CIO ("Local 30") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Local 30 asks the Court to vacate the award under the same statute. Because the arbitrator exceeded her authority by ordering that payments be made by individuals who were not parties to the arbitration agreement and who did not participate in the arbitration itself, the award is vacated in part.

## II.   BACKGROUND

### a.   Events Giving Rise to the Arbitration

ABM provides building maintenance and janitorial services to commercial and other properties. Petitioner's Memorandum of Law in Support of Motion for Summary Judgment Confirming Arbitration Award ("Petitioner's Memorandum"), Dkt. No. 20 at 1. One of the buildings that ABM serviced was located in Tarrytown, New York. Respondent's Response to Petitioner's Statement of Undisputed Material Facts Pursuant to Rule 56.1 ("Respondent's Response"), Dkt. No. 23 at ¶ 2. ABM employed operating engineers at this building, who were

represented by Local 30. *Id.*

Local 30 and ABM were parties to a collective bargaining agreement (the "CBA") that was effective from January 1, 2015 through December 1, 2017. *Id.* During the term of the CBA, ABM's customer sold the building and terminated its contract with ABM. *Id.* at ¶ 4. ABM was informed that the building's new owner would not continue to employ the Local 30 employees who had been working there. Petitioner's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Petitioner's Statement"), Dkt. No. 22 at ¶ 5; Respondent's Response at ¶ 5. Based on this information, ABM paid two Local 30 employees—John Phillip and Eugene Clerkin—termination pay and accrued, but unused, vacation and sick credit as required under the CBA. Respondent's Response at ¶ 6. Phillip and Clerkin, however, alleged that Local 30 had not paid them all of the vacation credit that they had accrued and filed grievances pursuant to the CBA. *Id.* at ¶ 7. ABM denied their claims. Local 30 then pursued Phillip and Clerkin's claims through the CBA's grievance procedures. *Id.* at ¶ 8.

In the course of investigating Phillip and Clerkin's grievances, ABM discovered that the building's new owner had continued to employ them and that they had never lost a workday. *Id.* at ¶ 9. ABM then demanded that Phillip and Clerkin return the termination pay that ABM had paid them. *Id.* at ¶ 10. ABM made its repayment demands directly to Phillip and Clerkin by letter. *See* Opinion and Award of Arbitrator Randi E. Lowitt dated October 12, 2018, Dkt. No. 21, Ex C. at 4. Local 30 and ABM expressly agreed to arbitrate Local 30's grievances regarding Phillip and Clerkin's vacation credit and ABM's claims seeking to claw back the termination pay it paid to Phillip and Clerkin. Respondent's Response at ¶ 13. The parties then selected an arbitrator to hear the case. *Id.* at ¶ 14. After a full hearing on ABM and Local 30's claims, the arbitrator issued an opinion and award (the "Award") on October 12, 2018, which: (i) found that Phillip and Clerkin were not

entitled to termination pay; (ii) directed Phillip and Clerkin to repay ABM the sums of money that ABM alleged that they owed; and (iii) denied Local 30's grievances in their entirety.

### b. Procedural History

ABM filed a motion for summary judgment to confirm the Award on January 16, 2019. Dkt. No. 19. Local 30 filed its opposition on February 5, 2019. Dkt. No. 24. In its opposition, Local 30 cross-moved for summary judgment to vacate the Award or to dismiss ABM's petition. ABM filed its reply on February 12, 2019, Dkt. No. 25, and Local 30 filed a sur-reply on February 25, 2019, Dkt. No. 30.

### III. Applicable Law

### a. The Court's Review of an Arbitral Award

"Section 301 of the [LMRA], 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). A court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537. Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) ("Because [t]he federal policy of settling labor disputes by arbitration would be

3

undermined if courts had the final say on the merits of [arbitration] awards, an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice.") (citation and internal quotation marks omitted); *Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.") (internal quotation marks omitted). An arbitrator's scope of authority "'generally depends on the intention of the parties to an arbitration and is determined by the agreement or submission.'" *Local Union No. 38 v. Hollywood Heating & Cooling, Inc.*, 88 F. Supp. 2d 246, 252 (S.D.N.Y. 2000) (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987)). Furthermore, if parties "did not intend to be bound by [an] agreement, then the arbitrator . . . acted without authority in issuing its decision." *Id.* at 255.

### b. Arbitration is a Matter of Contract

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986) (internal citation and quotation marks omitted); *see also Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) ("[T]he obligation to arbitrate remains a creature of contract.") (internal citation and quotation omitted). As is the case with contracts generally, only signatories to an arbitration agreement are bound by its terms. *See Local Union No. 38 Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004) ("Ordinarily, binding a non-signatory to a CBA runs afoul of the fundamental premise that 'a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'") (quoting *United Steelworkers of America*, 363 U.S. at 582).

There are exceptions to this general rule, however. "Absent an agreement to arbitrate, [the Second Circuit has] recognized only limited theories upon which [it is] willing to enforce an arbitration agreement against a non-signatory." *Local Union No. 38*, 357 F.3d at 268 (citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)); *see also Smith/Enron Cogeneration Ltd. P'Ship, Inc.*, 198 F.3d at 97. "A 'willing signatory . . . seeking to arbitrate with a non-signatory that is unwilling must establish at least one of the five theories described in *Thomson-CSF* . . . 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Local Union No. 38*, 357 F.3d at 269 (quoting *Optibase*, 337 F.3d at 129). The doctrine of assumption provides that "in the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate." *Thomson-CSF, S.A.*, 64 F.3d at 777; *see, e.g., Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991) (holding that flight attendants manifested a clear intention to arbitrate by sending a representative to act on their behalf in arbitration process). The Second Circuit has also made clear that "traditional principles of agency law may bind a non-signatory to an arbitration agreement." *Thomson-CSF, S.A.*, 64 F.3d at 777 (internal citations omitted). Furthermore, in addition to the five theories articulated in *Thomson-CSF, S.A.*, the Second Circuit has recognized that a non-signatory may also be bound by an arbitration agreement where that is the intent of the parties as reflected in the language of the agreement. *See McPheeters v. McGinn, Smith, and Co., Inc.*, 953 F.2d 771, 772 (2d Cir. 1992) (explaining "[u]nder general contract principles, we may deem non-signatories to fall within the scope of an arbitration agreement where that is the intent of the parties" and looking to the language of the arbitration agreement to determine the parties' intent). The Court considers whether any of the

5

three theories described above permits Clerkin and Phillip, as non-signatories, to be bound by the CBA.[1]

## IV. DISCUSSION

### a. The Collective Bargaining Agreement

As explained above, ABM and Local 30 entered into a collective bargaining agreement, which governed the dispute resolution procedures between the parties, including their obligation to arbitrate certain disputes. *See* Dkt. No. 21, Ex. 1 (the "Collective Bargaining Agreement" or the "CBA"). The preamble of the CBA describes ABM and Local 30 as the only parties to the agreement:

> Agreement made this first day of January, 2015, by and between ABM Janitorial Services Northeast with its principal office located at . . . (hereinafter referred to as the "Employer"), and the International Union of Operating Engineers Local 30, 30A and 30B, AFL-CIO, having its principal place of business at . . . (hereinafter referred to as the "Union").

*Id.* at pg. 3. Only those entities signed the CBA.

---

[1] Although ABM limits its arguments to the theories of agency and assumption, the Court has also considered whether the other three theories articulated in *Thomson, CSF, S.A.* apply to this case. 64 F.3d at 777. Under the theory of incorporation by reference, "a nonsignatory may compel arbitration against a party to an arbitration agreement when that party has entered into a separate contractual relationship with the nonsignatory which incorporates the existing arbitration clause." *Id.* (citing *Import Steel Corp. v. Mississippi Valley Barge Line Co.*, 351 F.2d 503, 505-06 (2d Cir. 1965)). Because neither party alleges the existence of a separate contractual agreement between the signatories to the CBA and the non-signatories that incorporates the CBA's arbitration provision, the Court concludes that incorporation by reference is inapplicable here. The veil piercing/alter ego theory applies in circumstances in which "the corporate relationship between a parent and its subsidiary are sufficiently close as to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other." *Id.* Here, because the non-signatories are neither corporate entities nor subsidiaries of Local 30, the veil piercing/alter ego theory is inapplicable. Finally, the doctrine of estoppel can bind a non-signatory to an arbitration agreement in two circumstances. *Thomson, CSF, S.A.*, 64 F.3d at 778–79. In the first instance, a non-signatory may be bound by an arbitration agreement after it has knowingly exploited an agreement containing the arbitration clause for its direct benefit. *Id.* The benefits derived through this exploitation must be direct, meaning they flow directly from the agreement in question. *See, e.g.*, *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993). Estoppel does not apply in this case. The non-signatories did not take advantage of the CBA's arbitration clause to derive any sort of benefit. To the contrary, the arbitrator entered an award against them to their detriment. Under the second potential theory of estoppel, a court will "estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed," and the signatory and nonsignatory parties share a close relationship. *Id.* at 779. This potential basis for estoppel, however, does not apply in situations that mirror the current case, namely "where the signatory to an arbitration clause seeks to enforce it against a non-signatory." *MAG Portfolio Consult, GMBH* v. *Merlin Biomed Group, LLC*, 268 F.3d 58, 62 (2d Cir. 2001). Accordingly, the Court concludes that estoppel does not apply.

Furthermore, the dispute resolution procedure as outlined in the CBA makes clear that it applies solely to ABM and Local 30:

> When any dispute shall arise in connection with the interpretation . . . or performance of the Agreement, the parties agree that they shall endeavor in good faith, first to adjust and settle such dispute between themselves, and failing such adjustment or settlement between themselves, either party may demand arbitration and in the event that they are unable to agree upon an impartial arbitrator, he shall be designated upon request by either party, by the New York State Board of Mediation, and the decision and award of the arbitrator shall be final and binding upon the parties.

*Id.* at Article 11.

### b. The Arbitrator Exceeded Her Authority

The arbitrator exceeder her authority by issuing an award against Phillip and Clerkin, who were not parties to the arbitration agreement. As explained above, ABM demanded repayment of the termination pay from Phillip and Clerkin but asserted the claim solely through an arbitration proceeding against Local 30, in which neither Phillip nor Clerkin participated. Phillip and Clerkin were not parties to the CBA because neither individual was a signatory to the agreement. Additionally, none of the theories permitting an arbitration agreement to bind non-signatories applies to this case.

#### i. Assumption

First, assumption is not relevant in this case because neither Phillip nor Clerkin participated in the arbitration proceeding between ABM and Local 30. Respondent's Statement of Additional Material Facts at ¶ 2; *see also* Dkt. No. 23, Ex. C at 2. Accordingly, their conduct did not manifest an agreement to arbitrate.

#### ii. The Language of the CBA

Second, the language of the CBA does not suggest that the parties to the agreement—Local 30 and ABM—intended the agreement's arbitration clause to bind Phillip and Clerkin. The language of the CBA makes clear that it binds only ABM and Local 30, not third parties. Specifically, as

7

detailed above, the preamble to the CBA describes ABM and Local 30 as the only parties to the agreement. Collective Bargaining Agreement at pg. 3. Furthermore, the language of the CBA's dispute resolution procedure indicates that ABM and Local 30 are the exclusive parties to the CBA. Collective Bargaining Agreement at Article 11. *See Local 205, Cmty. & Soc. Agency Employees' Union, Dist. Council 1707 AFSCME, AFL-CIO v. Day Care Council of New York, Inc.*, 992 F. Supp. 388, 392 (S.D.N.Y. 1998) ("Moreover, within this section, the term 'either party' is used, indicating that the arbitration clause was intended to apply to only two 'parties', the union and the [employer]."). Finally, ABM and Local 30 are the only signatories to the CBA. Collective Bargaining Agreement at pg. 12. The Court concludes that the language of the CBA does not indicate that the parties to the agreement intended to bind Clerkin and Phillip.

iii. Agency

ABM argues that Clerkin and Phillip are bound by the CBA's arbitration provision by the law of agency. ABM presents two arguments invoking the law of agency. First, ABM argues that it had a right to rely on Local 30's authority to participate in the arbitration process on Clerkin and Phillip's behalf. Specifically, ABM argues that Local 30 had actual authority to represent Clerkin and Phillip because, it claims, the National Labor Relations Act (the "NLRA") allows a union to serve as its employees' exclusive representative to bargain issues related to conditions of employment. *See* Dkt. No. 25 at 4. There is no question that § 9(a) of the NLRA authorizes a union to act as the exclusive representative of all employees in the collective bargaining process. *See* 29 U.S.C. § 159(a)("Representatives designated . . . for the purposes of collective bargaining by the majority of the employees in a unit . . . shall be the exclusive representatives of all employees . . . for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment."); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 255-56 (2009) ("As the employees' exclusive bargaining representative, the Union enjoys broad authority . . . in the

8

negotiation and administration of [the] collective bargaining contract.") (internal citation and quotation omitted). ABM, however, fails to identify a case supporting the proposition that it argues here: that a union can bind its members to make payments ordered by an arbitrator under an arbitration agreement to which they were not signatories, following a process in which they did not participate. ABM has failed to provide adequate support for their argument that § 9(a) of the NLRA conferred actual authority on Local 30 to bind its members to comply with the orders of the arbitrator in this case.

Second, and in the alternative, ABM argues that Local 30 had apparent authority to arbitrate the recoupment claims because it acted as Clerkin and Phillip's agent. This argument also fails. Apparent authority requires a showing that "'(1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question and (2) the third party reasonably relied on the representations of the agent.'" *Star Funding, Inc. v. Tire Centers, LLC*, 717 F. App'x 38, 41 (2d Cir. 2017) (quoting *Herbert Constr. Co. v. Cont'l Ins. Co.*, 931 F.2d 989, 993-94 (2d Cir. 1991)) (internal citations and quotation marks omitted); *see also Fennell v. TLB Kent Co.*, 865 F.2d 498, 503 (2d Cir. 1989) ("Second Circuit caselaw supports the view that apparent authority is created only by the representations of the principal to the third party, and explicitly rejects the notion that an agent can create apparent authority by his own actions or representations."); *Precedo Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 254 (S.D.N.Y. 2014) ("[T]he existence of apparent authority hinges upon the principal's communications to the third party.").

ABM points to no actions, words, or representations on Clerkin or Phillip's behalf to support the proposition that they granted Local 30 authority to arbitrate ABM's recoupment claims. Furthermore, "the Second Circuit has cautioned that 'conclusory allegations of a general agency relationship between a signatory and non-signatory do not suffice to compel . . . unwilling non-signatories to arbitrate under that theory.'" *Masefield AG v. Colonial Oil Industries, Inc.*, No. 05-CIV-

9

2231 (PKL), 2005 WL 911770, at *5 (S.D.N.Y. Apr. 18, 2005) (quoting *Alco Int'l, E.C. v. Merrill Lynch & Co.*, 98 F. App'x. 44, 46-47 (2d Cir. 2004)(citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003)). As such, ABM's apparent authority argument fails. *See, e.g.*, *Myerson*, 606 F. Supp. at 289 (concluding that agent lacked apparent authority to negotiate agreement on behalf of principal where there were no allegations that principal conferred such authority on agent).

    iv. <u>Waiver</u>

  Finally, ABM contends that Local 30's argument that the arbitrator exceeded her authority by imposing relief against Clerkin and Phillip fails because Local 30 failed to previously raise the issue of the arbitrability of ABM's recoupment claims. *See* Dkt. No. 25 at 3. Accordingly, ABM argues that Local 30 has waived this argument and that the Court should not consider whether the arbitrator exceeded her authority. This argument fails. The arbitrator exceeded her authority by imposing relief against individuals who were neither parties to the CBA nor present at the arbitration. Because an arbitrator "acts inherently without power" to the extent that she "goes beyond [the] self-limiting [arbitration] agreement between consenting parties," the Court must vacate an award ordered in such circumstances. *Porzig*, 497 F.3d at 140 (citing 9 U.S.C. § 10(a)(4)). Accordingly, irrespective of whether Local 30 previously raised this argument, the Court must consider whether the arbitrator exceeded her authority when reviewing an arbitration award and vacate any portion of the award in which the arbitrator exceeded her authority. *See, e.g.*, *Local 1199, Drug, Hosp. & Health Care Employees Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) ("If it is clear that the arbitrator has exceeded his authority, the award cannot stand."); *see also Tully Const. Co./A.J. Pegno Const. Co., J.V. v. Canam Steel Corp.*, No. 13 CIV. 3037 PGG, 2015 WL 906128, at *19 (S.D.N.Y. Mar. 2, 2015) (vacating arbitrator's award because he exceeded the authority granted to him by not complying with the parties' agreement).

> v. The Court must Vacate the Portion of the Award Mandating Payments by Non-Parties

The Court must vacate the portion of the arbitrator's award here that mandates payments by non-parties to the CBA. In *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, the Second Circuit vacated a portion of an arbitration award that ordered an attorney to return fees to a client because the attorney was not a party to the arbitration agreement and neither the attorney nor the client had agreed to arbitrate a dispute over the fees. 497 F.3d 133, 140-41 (2d Cir. 2007). The Court of Appeals explained that where an "arbitrator goes beyond [the] self-limiting [arbitration] agreement between consenting parties, it acts inherently without power, and an award ordered under such circumstances must be vacated." *Id.* at 140 (citing 9 U.S.C. § 10(a)(4)). Here, the arbitrator issued an award directed at non-parties to the CBA, and, as explained above, the Court cannot conclude that any exceptions under which an arbitration agreement may bind non-signatories apply to this case. As such, the arbitrator exceeded the scope of her authority as defined by the CBA. Accordingly, the award is *ultra vires* and unenforceable to the extent that it imposes obligations on non-parties to the agreement. *See, e.g.*, *Amedeo Hotels Ltd. P'ship v. New York Hotel & Motel Trades Council, AFL-CIO*, No. 10-CIV-6150 (NRB), 2011 WL 2016002, at *8 (S.D.N.Y. May 18, 2011) (explaining that "there is no question that an arbitrator cannot bind non-parties to the arbitration agreement" and vacating portion of arbitration award that sought to bind a non-party to the arbitration agreement).

## V. CONCLUSION

For the preceding reasons, the arbitration award is vacated with respect to the provisions that impose an obligation on non-parties to the CBA. Specifically, the portion of the award directing Clerkin to return $13,956.00 to ABM and directing Phillip to return $7,583.19 to ABM is vacated. This opinion does not modify the remainder of the award, which is not implicated by the arbitrator's *ultra vires* act. Accordingly, Petitioner's motion to confirm the arbitration award is DENIED. Respondent's cross-motion to vacate the arbitration award is GRANTED IN PART. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 19 and to close this case.

SO ORDERED.

Dated: August 2, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge